Ollie GREEN, Plaintiff,

v.

NEW YORK & CUBA MAIL STEAMSHIP COMPANY and the United States Lines Company, Defendants.

United States District Court
S. D. New York.
May 12, 1958.

Silas B. Axtell, New York City, for plaintiff, Charles Andrews Ellis, New York City, of counsel.

Dougherty, Ryan & Mahoney, New York City, for defendants, Robert M. Pellegrino, New York City, of counsel.

SUGARMAN, District Judge.

On December 19, 1956, the plaintiff Ollie Green brought suit against the New York & Cuba Mail Steamship Company and the United States Lines Company. His complaint and the papers on this motion present these facts:

Between August 11, 1953 and December 21, 1953 the defendants, as agents for the United States of America, owner of the S. S. Virginia City Victory, operated, managed and controlled that vessel on a voyage to and from the Far East. On board for that voyage were Chamberlin, first assistant engineer, Kampe, second assistant engineer, and Kauder, whose capacity is undisclosed. It is charged that Kampe and Chamberlin were each "a troublemaker and a man of neurotic, mean, dangerous and vicious temper and disposition capable of and given to threatening, insulting, instigating quarrels with, and committing assaults and physical injuries upon the plaintiff and other members of the crew without justification, provocation or excuse and violating and disrupting the discipline aboard said ship and showing disrespect and disobedience of and contempt for the master of said vessel and the safety of the crew."

The complaint further charges that on October 28, 1953, while the vessel was at sea, Kampe assaulted and battered the chief engineer and later, while the vessel was in the Port of Manila, Kampe assaulted and battered the plaintiff while they were ashore; that when the vessel left Manila for Japanese ports the captain refused to continue Kampe as a member of the crew and so advised the defendants; that nevertheless on November 19, 1953 the defendant United States Lines Company wrote the master:

"We wish to go on record in advising, that William R. Kampe, who was employed aboard your vessel as 2nd Asst. Engineer, arrived in Japan on November 15th with specific intention of rejoining your command for the continuation of your voyage. We have since been advised by you, that Kampe was a trouble maker and that you did not, under any circumstances, wish to accept him back aboard your vessel, fearing that his return would upset the moral [sic] of your complement, even though a replacement had not been signed on in his absence * * However, as the case now stands, it is required that this engineer be reinstated aboard your command. We regret that there is no alternative but to approach this matter as per usual practice in a foreign port."

It is charged that Kampe was accordingly re-employed by the captain of the vessel and that when the vessel returned to Mobile, Alabama, on or about December 20 or 21, 1953, and before the crew had been signed off, Kampe, Chamberlin and Kauder viciously assaulted the plaintiff, causing him injuries for which he brought this suit.

The defendants interposed an answer, containing, *inter alia,* a general denial and a first affirmative defense that the vessel was at all the times mentioned owned by the United States of America and that the plaintiff's only remedy is by suit against the owner under the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq. The defendants now move for summary judgment.

It is agreed that the defendant New York & Cuba Mail Steamship Company entered into a Service Agreement with the United States of America on May 28, 1951, pursuant to which said defendant took control of the S. S. Virginia City Victory on April 2, 1953, and relinquished it on January 8, 1954, and that the United States Lines Company was a subagent for the voyage in question. The agreement of May 28, 1951 between New York & Cuba Mail Steamship Company and the United States of America provides among other things:

"Article 3. Duties of the General Agent. * * *

(d) Procure the Master of the vessels operated hereunder, subject to the approval of the United States. The Master shall be an agent and employee of the United States, and shall have and exercise full control, responsibility and authority with respect to the manning, navigation and management of the vessel. The General Agent shall procure and make available to the Master for engagement by him the officers and men required by him to fill the complement of the vessel. Such officers and men shall be procured by the General Agent, through the usual channels and in accordance with the customary practices of commercial operators and upon the terms and conditions of the General Agent's collective bargaining agreements, if any. The officers and members of the crew shall be subject only to the orders of the Master. All such persons shall be paid in the customary manner with funds provided by the United States hereunder."

Thus, the basic issue is whether the action of the defendant United States Lines Company of November 19, 1953, in instructing the captain of the vessel against his better judgment to permit Kampe to remain a member of the crew, was within the scope of its agency as sub-agent of the defendant New York & Cuba Mail Steamship Company and the latter's agency of the United States of America. If it was, then only the United States is answerable and the motion for summary judgment should be granted. 46 U.S.C.A. § 745. If it was not, then these defendants are answerable directly and the motion for summary judgment should be denied. Whether, in the latter case, the defendant New York & Cuba Mail Steamship Company would be entitled under another paragraph of the Service Agreement to indemnity from the United States is not presented by this motion.

Until the circumstances upon which the defendants directed the captain to re-employ Kampe are disclosed, it cannot be determined whether the order to permit him to continue on board the vessel was within the scope of the agency. Therefore, whether this alleged misconduct of the defendants took place; if so, whether it fell within the ambit of the general agency agreement; and, if so, whether it proximately caused plaintiff's injuries are questions to be determined on a trial.

The defendants' motion for summary judgment is denied.

It is so ordered.